**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICK CAMPBELL, M.D., United
States of America and State of
California ex rel.,
                    *Plaintiff-Appellant,*

UNITED STATES OF AMERICA,
                    *Intervenor-Appellee,*

                    v.

REDDING MEDICAL CENTER, a
California corporation; TENET
HEALTHCARE CORPORATION, a
Nevada corporation; CHAE HYUN
MOON, M.D.; THOMAS RUSS, M.D.;
FIDEL REALYVASQUEZ, M.D.; TENET
HEALTHSYSTEM HOSPITALS, INC., a
Delaware corporation; CARDIOLOGY
ASSOCIATES OF NORTHERN
CALIFORNIA; RICARDO MORENO-
CABRAL, M.D., dba Cardiac
Thoracic and Vascular Surgery
Medical Group,
                    *Defendants.*

No. 03-17082

D.C. No.
CV-02-02457-DFL

OPINION

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

Argued and Submitted
July 14, 2005—San Francisco, California

Filed August 22, 2005

11117

Before: Barry G. Silverman, Kim McLane Wardlaw, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Silverman

**COUNSEL**

David Rude, Clark & Rude, San Jose, California, for the appellant.

Peter D. Keisler, McGregor W. Scott, Michael A. Hirst, Douglas N. Letter and Irene M. Solet, Civil Division, Department of Justice, Washington, D.C., for the appellee.

**OPINION**

SILVERMAN, Circuit Judge:

The False Claims Act provides that "[n]o court shall have jurisdiction" over a qui tam action based on allegations of fraud that already have been publicly disclosed, unless the relator was an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A). In addition, the Act precludes any person from filing a subsequent "related action based on the facts underlying the pending action" when a qui tam action already has been filed. *Id.* § 3730(b)(5). This is known as the first-to-file bar. The question before us is whether the first-to-file bar prevents the filing of a subsequent related action when the first action is jurisdictionally defective because the relator was not an original source of publically disclosed information. We hold today that it does not. If the first-filed qui tam action was not filed by an original source and is therefore not jurisdictionally cognizable, it does not constitute the first-filed complaint for the purposes of § 3730(b)(5).

**I. Factual and Procedural Background**

This lawsuit arises out of a scheme involving the performance of thousands of unnecessary invasive cardiac procedures at the Redding Medical Center ("RMC") for the purposes of fraudulently billing Medicare. On October 30, 2002, Magistrate Judge Peter Nowinski issued a medical records search warrant authorizing the FBI to investigate RMC and the medical offices of the defendant doctors. The FBI executed the search warrant at RMC that same day. The U.S. Attorney's Office also released the Search Warrant Affidavit to the public and the press on October 30.

On November 5, 2002, John Corapi, a former RMC patient, and Joseph Zerga, his friend, filed a sealed qui tam complaint pursuant to the False Claims Act, 31 U.S.C. § 3729-3733 ("FCA"), and the California False Claims Act in the United

States District Court for the Eastern District of California against RMC; Tenet Healthcare Corporation; Chae Moon, RMC's director of Cardiology; and Fidel Realyvasquez, the Chairman of RMC's Cardiac Surgery Program. The Corapi/Zerga complaint alleged that the defendants had submitted false claims to federal and state medical insurance programs and stated that they had direct and independent knowledge of the facts underlying the complaint and had brought that information to the attention of the United States government. The Corapi/Zerga suit was assigned to Judge William Shubb.

Three days later, on November 8, 2002, Patrick Campbell, a local physician, filed his own complaint under the FCA and the California statute in the same court against the same defendants. Campbell later amended his complaint to accuse the defendants of engaging in a scheme to defraud state- and federally-funded health care insurance programs, including Medicare, Medicaid, and MediCal, by submitting claims for cardiac care that the defendants knew to be medically unnecessary or inappropriate. The complaint alleged that the defendants had performed medically unjustified invasive diagnostic coronary artery imaging tests and then misrepresented the results of these tests to patients so that they would undergo invasive cardiac procedures. Campbell's complaint was assigned to Judge David Levi. The government and Campbell separately filed notices of related cases, but Judge Shubb declined to treat the cases as related.

The United States moved to dismiss Campbell's complaint pursuant to FED. R. CIV. P. 12(h)(3) for lack of subject matter jurisdiction. The government argued that Campbell's action was based on the same facts underlying the Corapi/Zerga complaint and therefore was barred under the FCA's first-to-file bar, 31 U.S.C. § 3730(b)(5).

Campbell argued in response that because Corapi and Zerga were not original sources the district court had no jurisdiction over their action and their suit could not be considered

a pending action for the purposes of the first-to-file bar. Campbell asked the district court to assume for the purposes of the motion that the Corapi/Zerga suit would be dismissed for lack of standing. The government responded that it took no position on whether the Corapi/Zerga complaint was jurisdictionally flawed, arguing that, "[t]hat analysis is irrelevant to the issue of whether the Court has subject matter jurisdiction of Campbell's complaint."

The district court granted the government's motion to dismiss Campbell's action. In doing so, the court assumed that Corapi and Zerga were *not* original sources, but held that Campbell's suit was nevertheless barred by the first-to-file rule, citing *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181 (9th Cir. 2001).

The United States subsequently announced that it had settled its civil claims against RMC and Tenet Healthcare Corporation for payment of $54 million. Campbell filed with Judge Levi objections to the settlement and sought a hearing on its fairness pursuant to 31 U.S.C. § 3730(c)(2)(B) and discovery regarding the amount of and reasons for the settlement. The government responded that Dr. Campbell's motion should be denied because his case had been dismissed and he had no standing to object to the settlement. The district court agreed with the government and denied Dr. Campbell's objections, concluding that Dr. Campbell had no standing to object to the government's settlement or to demand a fairness hearing.

Dr. Campbell appealed both the district court's order dismissing his complaint and the denial of his objections to the settlement.

The United States subsequently notified the district court in the Corapi/Zerga suit that it intended to pay those plaintiffs $8.1 million as the relators' share of the $54 million recovery

by the United States in that case. However, that payment has not been finalized.

## II.  Jurisdiction and Standard of Review

We have jurisdiction to review the district court's dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1291. *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 (9th Cir. 2004). The district court's dismissal of a claim for lack of subject matter jurisdiction is reviewed de novo. *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 654 (9th Cir. 2003), *cert. dismissed*, 125 S. Ct. 1239 (2004, 2005).

## III.  Discussion

### A.  The False Claims Act

**[1]** The False Claims Act, 31 U.S.C. § 3729(a), imposes liability on those who submit a false or fraudulent claim for payment to the United States Government. The qui tam provisions of the False Claims Act encourage private parties who are aware of fraud against the government to sue for a civil penalty on behalf of the government. *Id.* § 3730(b)(1). If the government intervenes and the action is successful, such parties will share in up to 25% of the government's recovery. *Id.* § 3730(d)(1).

A private party, referred to as the "relator," may bring a civil action in the name of the government to recover damages against a person who has defrauded the government. *Id.* § 3730(b)(1). The complaint is filed under seal. *Id.* § 3730(b)(2). "A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses" is served on the government. *Id.* Within 60 days, the government must elect to either proceed with the action itself, or notify the court that it declines to take over the

action, in which case the relator has the right to pursue the action. *Id.* § 3730(b)(4).

**[2]** Section 3730(e)(4)(A) states that "[n]o court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . unless . . . the person bringing the action is an original source of the information." *Id.* § 3730(e)(4)(A). This subsection prevents opportunistic individuals from bringing qui tam actions — and sharing in the government's recovery — when they have done nothing to expose the allegations of fraud. *Compare United States ex rel. Devlin v. California*, 84 F.3d 358, 362 (9th Cir. 1996), *with United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651, 656-57 (D.C. Cir. 1994). For a court to have jurisdiction over a FCA case brought by a private party after the allegations have been made public, the relator must have been "an original source" of the allegations. An "original source" is someone who has "direct and independent knowledge of the information on which the allegations are based" and has voluntarily provided it to the government before filing suit. 31 U.S.C. § 3730(e)(4)(B); *see also Devlin*, 84 F.3d at 360 n.3 (internal quotation marks omitted).

**[3]** Section 3730(b)(5) provides: "When a person brings an action under [§ 3730(b)], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." This is the first-to-file bar, which encourages prompt disclosure of fraud by creating a race to the courthouse among those with knowledge of fraud. We previously have held that § 3730(b)(5) bars without exception a subsequent related action, even if the first action had been dismissed on the merits. *Lujan*, 243 F.3d at 1188. The question before us is whether the first-to-file bar also precludes the filing of a subsequent related action when the first complaint is subject to dismissal solely on jurisdictional grounds— i.e., because the relator is not an original source of allegations that already have been publicly disclosed.

## B. The First-to-File Bar

The district court relied on our interpretation of § 3730(b)(5) in *Lujan* for the conclusion that the first-to-file bar operates independently of § 3730(e)(4) and that any complaint filed, even if jurisdictionally flawed, would bar all subsequent complaints related to the same underlying facts. We disagree with this conclusion for two reasons. First, *Lujan* did not contemplate the situation presented to us today, which involves publicly disclosed allegations that are particularly vulnerable to opportunistic qui tam suits. Second, such an interpretation of § 3730(b)(5) would contravene the intent of Congress in enacting the 1986 amendments to the FCA. Congress sought to provide incentives to qui tam whistleblowers to come forward, and we believe that an overly broad interpretation of the first-to-file bar, allowing even sham complaints to preclude subsequent meritorious complaints in a public disclosure case, would contravene this intention.

### 1. *United States ex rel. Lujan v. Hughes Aircraft Co.*

First we address the district court's ruling that *Lujan* compels dismissal of Campbell's claim. Linda Lujan, a former Hughes Aircraft Employee, brought a qui tam suit in 1992, alleging that Hughes was engaged in fraudulent contracting prices. *Lujan*, 243 F.3d at 1184. William Schumer, also a former Hughes employee, had previously filed his own qui tam suit in 1989, also challenging the allocation of costs in Hughes' contracts with the government. *Id.* at 1183. The government declined to intervene in Schumer's suit, and Schumer's action was subsequently dismissed on the merits. *Id.* at 1183-84. Hughes moved to dismiss Lujan's action under 31 U.S.C. § 3730(b)(5). *Id.* at 1186. The district court granted the motion, finding that Lujan's claims were "based on the same essential facts and raised the same issues as Schumer's claims," and were therefore barred under 31 U.S.C. § 3730(b)(5). *Id.* (internal quotation marks omitted). We agreed:

> Section 3730(b)(5)'s plain language unambiguously establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts. . . . Moreover, an exception-free, first-to-file bar conforms with the dual purposes of the 1986 amendments: to promote incentives for whistle-blowing insiders and prevent opportunistic successive plaintiffs.

*Id.* at 1187.

We reasoned that the subsequent dismissal of Schumer's complaint did not affect operation of the first-to-file bar because, "[d]ismissed or not, Schumer's action promptly alerted the government to the essential facts of a fraudulent scheme — thereby fulfilling a goal behind the first-to-file rule. Accordingly, we . . . hold that *Schumer* was a 'pending action' under § 3730(b)(5)." *Id.* at 1188.

However, *Lujan* is distinguishable from the action before us because Schumer's action was subsequently dismissed on the merits. Lujan did not argue that her action should proceed because Schumer was not an original source. *Id.* at 1187. As a result, we do not believe the reasoning behind *Lujan* extends to a situation not presented in that case, where the first complaint filed does not fulfill the jurisdictional prerequisites established by 31 U.S.C. § 3730(e).

**[4]** The *Lujan* court reasoned that where two subsequent suits raised essentially the same claims, permitting the second suit to go forward was not necessary to alert the government to the underlying facts of a fraudulent scheme. However, in a public disclosure case, the government has already been alerted to the essential facts of the fraudulent scheme when the information was publicly disclosed under 31 U.S.C. § 3730(e)(4)(A).[1] A non-original source does not contribute to

---

[1]After Lujan filed her qui tam suit under seal, the Los Angeles Times ran two articles about her claims. *Lujan*, 243 F.3d at 1184-85. However,

the government's knowledge. An original source, on the other hand, "must have had a hand in the public disclosure" which alerted the government to the essential facts of the fraudulent scheme. *Wang*, 975 F.2d at 1418. Because original sources are still permitted to bring a qui tam complaint after public disclosure, Congress clearly believed that original sources possessed valuable information that would assist the government in prosecution of false claims actions. *See, e.g.*, *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1154 (3d Cir. 1991) ("One theme recurring through the legislative history . . . is the intent to encourage persons with first-hand knowledge of fraudulent misconduct to report fraud."). Congress also sought to reward whistleblowers who had disclosed information to the government before public disclosure of the allegations. *See, e.g., United States ex rel. Biddle v. Bd. of Trs. of the Leland Stanford, Jr. Univ.*, 161 F.3d 533, 539 (9th Cir. 1998). Therefore, the justification for barring Lujan's claim does not extend to the situation before us because a pending action filed by a non-original source does not "alert[ ] the government to the essential facts of a fraudulent scheme." *Compare Lujan*, 243 F.3d at 1188.

## 2. Legislative History and Underlying Purpose of the False Claims Act

Upon determining that *Lujan* is not dispositive of the case at hand, we consider the plain language of § 3730(b)(5) and find that it also does not resolve the question of whether the first-to-file bar operates independently of § 3730(e)(4). Although "pending action" could be read to include any action filed, even if jurisdictionally flawed, it could also be read as only encompassing an action that will proceed on the

---

the court did not reach the issue of whether this constituted a public disclosure because Lujan's suit, filed before the articles were run, could not be said to be "based upon them." 31 U.S.C. § 3730(e)(4)(A).

merits, such as Schumer's action. Because we cannot determine how § 3730(b)(5) applies to the situation before us on the basis of the plain language alone, we consider the legislative history of the 1986 Amendments and the history of the FCA to ascertain the congressional intent in enacting the provision. *See United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999).

The Senate Report to the 1986 Amendments to the FCA, the most recent version of the statute, notes that, "[t]he Committee's overall intent in amending the qui tam section of the False Claims Act is to encourage more private enforcement suits." S. REP. NO. 99-345, at 23-24 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5288-89. The note to subsection (b)(5) simply states that the provision

> further clarifies that only the Government may intervene in a qui tam action. While there are few known instances of multiple parties intervening in past qui tam cases, the Committee wishes to clarify in the statute that private enforcement under the civil False Claims Act is not meant to produce class actions or multiple separate suits based on identical facts and circumstances.

*Id.* at 25 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5290 (internal citation omitted). The legislative history also does not resolve the dispute before us, although the congressional intent to encourage whistleblowers to come forward is clear. Because that example is not instructive with respect to the case before us, we consider the history of the FCA.

The FCA was originally enacted in 1863 to address fraud by defense contractors during the civil war. *Stinson*, 944 F.2d at 1153. Congress amended the FCA in 1943 in response to a Supreme Court decision that permitted a qui tam plaintiff to recover even though he had copied his allegations from the government's criminal indictment and contributed no original

information to the government's suit. *Id.* In amending the Act, Congress sought to exclude "parasitical suits" where the government already possessed the information underlying the complaint. *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1420 (9th Cir. 1991). However, courts read the 1943 amendments as foreclosing all qui tam suits where the government already possessed information about the allegations of fraud, even where the relator had independently discovered information about the fraud and conveyed it to the government. *Wang*, 975 F.2d at 1419; S. REP. NO. 99-345, at 12 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5277. Congress, in response, amended the statute again in 1986. *Wang*, 975 F.2d at 1419. "[T]he purpose of the 1986 amendments was to repeal overly-restrictive court interpretations of the qui tam statute, which had prohibited not only suits by private citizens based on information obtained by the government, but also suits brought by those who had information independently of the government." *Hagood*, 929 F.2d at 1420. The 1986 Amendments also sought to "encourage more private enforcement suits." *Stinson*, 944 F.2d at 1154 (internal quotation marks omitted) (noting other provisions to encourage qui tam suits, including increased monetary awards and a lower burden of proof).

### 3. Section 3730(b)(5) Does Not Create an Absolute First-to-File Bar When the First Complaint is Jurisdictionally Defective

Both the history of the FCA and the legislative history of the 1986 Amendments demonstrate the effort to achieve "the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs who have no significant information to contribute of their own." *Devlin*, 84 F.3d at 362 (internal quotation marks omitted); *see also United States ex rel. LaCorte v. Smithkline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 233 (3d Cir. 1998) ("Section 3730 attempts to reconcile two conflicting goals, specifically, preventing opportu-

nistic suits, on the one hand, while encouraging citizens to act as whistleblowers, on the other."); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004) ("The False Claims Act's qui tam provisions are designed to encourage private citizens to expose fraud but to avoid actions by opportunists seeking to capitalize on public information.").

Even where allegations have already been publicly disclosed, the original source requirement seeks to reward those who came to the government with information about fraud before the public disclosure. *Biddle*, 161 F.3d at 539.

**[5]** The FCA reflects the strong congressional policy of encouraging whistleblowers to come forward by rewarding the first to do so. *See, e.g., id.* ("Insiders who have no duty to disclose fraud, i.e., who do so voluntarily, should be encouraged to take 'significant personal risks to bring such wrongdoing to light,' and should be rewarded for doing so."). In amending the FCA, Congress sought to create incentives for insiders with information that would be particularly valuable to the government. *Devlin*, 84 F.3d at 361-62; *see also Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1046 n.10 (8th Cir. 2002) ("Congress's view of what a relator deserves to recover is plainly affected by the utility of the information to the government."). Section 3730(e)(4) attempts to balance the goals of "avoidance of parasitism and encouragement of legitimate citizen enforcement actions." *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039, 1042 (10th Cir. 2004) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994)).

**[6]** Construing § 3730(b)(5) to create an absolute bar would permit opportunistic plaintiffs with no inside information to displace actual insiders with knowledge of the fraud. The government conceded at oral argument that under its interpretation of § 3730(b)(5), a purely frivolous sham complaint filed in an instance where the allegations had been publicly dis-

closed would bar a subsequently filed action by an original source. This cannot be what Congress intended. We have previously noted that, "[i]n earlier versions of the FCA, the statute was abused by qui tam suits brought by private plaintiffs who had no independent knowledge of fraud." *Seal 1 v. Seal A*, 255 F.3d 1154, 1158 (9th Cir. 2001). Although the addition of § 3730(e)(4) would now prevent these plaintiffs from recovering in a public disclosure case, the simple fact that the sham complaint was filed before a meritorious complaint brought by a real original source would effectively prevent *anyone* from bringing a qui tam suit related to those claims. Such an interpretation would have the effect of reducing the number of qui tam suits in public disclosure cases, directly contravening the express intent of Congress. *See United States ex rel. Fine v. Chevron, U.S.A., Inc.*, 72 F.3d 740, 744 n.4 (9th Cir. 1995) (en banc) ("We have in the past relied on common-sense definitions to parse the terms of the qui tam provisions.").

The government responds to Campbell's argument that an absolute first-to-file rule would permit displacement of real whistleblowers by sham complaints by stating that such a situation would be prevented by FED. R. CIV. P. 9(b). However, although FED. R. CIV. P. 9(b) requires qui tam plaintiffs to plead fraud with particularity, this inquiry is separate from the original source inquiry under § 3730(e)(4). As a result, the government's argument does not adequately respond to Campbell's point that a placeholder complaint filed by a non-original source could divest the court of jurisdiction over a complaint appropriately filed by an original source, thereby thwarting the intent of Congress.

**[7]** To summarize: In dismissing Campbell's complaint under FED. R. CIV. P. 12(h)(3), the district court read *Lujan* to mean that § 3730(b)(5) bars a subsequent qui tam complaint even if the first complaint was itself jurisdictionally barred. However, the district court applied *Lujan* to a situation that was not before the *Lujan* court. To clarify the application of

*Lujan* to the circumstances before us, we hold that in a public disclosure case, the first-to-file rule of § 3730(b)(5) bars only subsequent complaints filed after a complaint that fulfills the jurisdictional prerequisites of § 3730(e)(4).

[8] As noted previously, the district court assumed for purposes of the motion to dismiss that Corapi and Zerga were not original sources, ruling that all that matters was whether Corapi and Zerga were the first to file. As we have shown, that is *not* all that matters. Accordingly, we remand so that the district court can determine if Corapi and Zerga were, indeed, original sources. If they were, their first-filed complaint disqualifies Campbell's. If they were not, the court has no jurisdiction over their complaint and Campbell would not be barred from filing his action. As a practical matter, there is almost no way that this determination can be made unless both the Corapi/Zerga and Campbell cases are consolidated, and we therefore direct the court to consider doing so after notice to all affected parties.

**REVERSED AND REMANDED.**